1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

KARMEN SMILEY,

CASE NO. 16cv158-WQH-MDD

11

Plaintiff,

ORDER

v.

12
13

HOLOGIC, INC., a Delaware
corporation, and DOES 1 through 20,

14

Defendants.

15

HAYES, Judge:

16        The matter before the Court is the motion for summary judgment filed by

17    Defendant Hologic, Inc. (ECF No. 39).

18    **I. Background**

19        On November 18, 2015, Plaintiff Karmen Smiley initiated this action by filing

20    a complaint in Superior Court in the State of California for the County of San Diego

21    alleging two causes of action against Defendant Hologic, Inc.: (1) retaliatory

22    termination in violation of California Labor Code section 1102.5, and (2) wrongful

23    termination in violation of public policy. (ECF No. 1-2). Plaintiff's second cause of

24    action alleges that her wrongful termination violates two public policies: (1) "for

25    employers not to retaliate against an employee for disclosing information to another

26    employee with the authority to investigate or correct violations where the employee has

27    reasonable cause to believe that the information discloses a violation of state or federal

28    statute or a violation or non-compliance with a state or federal rule or regulation", and

(2) "to neither discharge, nor formerly discipline, nor otherwise discriminate against an employee who discloses such information." *Id.* at 7.

On January 22, 2016, Defendant removed this action from Superior Court to United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 1332 and 1441(a),(b). (ECF No. 1 at 2). On January 22, 2016, Defendant filed an Answer. (ECF No. 2).

On October 14, 2016, Defendant filed a motion for summary judgment, or in the alternative, partial summary judgment. (ECF No. 39). On November 7, 2016, Plaintiff filed a response in opposition. (ECF No. 44). On November 14, 2016, Defendant filed a reply. (ECF No. 46). The Court heard oral argument on the motion for summary judgment on February 24, 2017.

## II. Factual Background

In a declaration filed by Defendant, Thomas Cardosa, a Hologic Human Resources Business Partner for the Finance Department in San Diego, states,

> Based on a review of [Plaintiff's] file, I know Plaintiff worked for Gen-Probe Incorporated from October 2004 until August 2012 when the company was acquired by Hologic, at which point Plaintiff began working for Hologic. . . . Plaintiff originally was hired as a Fixed Asset Accountant (later referred to as an Accountant II). On June 25, 2007, Plaintiff was transferred to the Cost Accounting Department as a Cost Accountant II. Plaintiff held this position until her termination on July 24, 2015. . . . As a HR Business Partner I was also involved with the final decision to terminate Plaintiff's employment and assisted her supervisors Chun Ren and John O'Shea through the process. The decision to terminate Plaintiff's employment was made and finalized within a day of her missing a performance meeting on July 20, 2015. As such, the decision to terminate Plaintiff's employment was finalized no later than July 21, 2015. However, as Plaintiff had already demonstrated that she would not attend a meeting with her supervisors and I, we used a previously scheduled appointment that Plaintiff had with another HR Business Partner, Stephanie Heller, on July 23, 2015 to communicate this decision with her. . . . Plaintiff was initially to be terminated on July 23, 2015. However, as she had a vacation day scheduled for July 24, 2015, the company moved back her official termination to July 24, 2015. Her last day worked, however, was July 23, 2015.

(Cardosa Decl., ECF No. 39-8).

In the deposition of John O'Shea, Senior Director of Finance at Hologic, O'Shea states that he was hired at Hologic in January of 2015 and was the direct supervisor of Joe Abramson, a senior finance manager, before Abramson left Hologic. O'Shea states that Chun Ren was hired to fill Abramson's position and, following some management changes, became Plaintiff's supervisor. (O'Shea Dep., ECF No. 39-4 at 13-18). O'Shea states that Plaintiff's primary role was cost accounting and that her cost accounting was not reliable. *Id.* at 19. O'Shea states, "I first became aware that there were issues with Karmen's work beginning in April of 2015 for the March close." *Id.*

In a declaration by Chun Ren, Senior Manager of Cost Accounting at Hologic, Ren states,

> From the time of my hire to July 23, 2015, I was Karmen Smiley's direct supervisor. As her direct supervisor, I was responsible for reviewing Ms. Smiley's work. As soon as I began working with Ms. Smiley, I began to notice errors in her work. When I attempted to address these errors with Ms. Smiley, I received push back, and while some of the errors would be corrected, I continued to see errors and have concerns with her performance.

> [] Therefore, I began documenting Ms. Smiley's performance issues with the purpose of having a performance discussion with Ms. Smiley. The goal of this performance meeting was never to terminate Ms. Smiley, but rather to engage in dialogue regarding my concerns and issue Ms. Smiley a Performance Improvement Plan. I began documenting my concerns with Ms. Smiley in late May or early June.

> [] By mid-July 2015, my supervisor John O'Shea, the Human Resources Business Partner, Thomas Cardosa and I felt we had sufficient specific examples of Plaintiff's performance problems to allow us to have a productive performance conversation with Plaintiff. I emailed my list of performance concerns to Mr. Cardosa, who incorporated the points into an agenda for the meeting. . . .

> [] I reached out to Plaintiff by Lync conversation on or about July 16, 2015 to schedule the meeting. . . . Plaintiff failed to respond to my inquiry.

> [] Therefore on July 19, 2015, I sent an invitation to Ms. Smiley, Mr. O'Shea and Mr. Cardosa for a meeting to be held on July 20, 2015, to discuss Plaintiff's performance issues and unprofessional attitude and to issue Plaintiff a Performance Improvement Plan.

> [] Ms. Smiley failed to attend this meeting, so Mr. O'Shea, Mr. Cardosa, and I were never able to address any of the concerns we had with Plaintiff's performance. Because of Ms. Smiley's demonstrated performance deficiencies, her unprofessional behavior, her outright refusal to work towards a constructive solution to her ongoing problems, and the final straw of her refusal to attend a performance meeting, Mr. O'Shea,

Mr. Cardosa and I made the decision to terminate Ms. Smiley's employment.

(Ren Decl., ECF No. 39-6 at 1-4).

Attached to the Ren declaration is a copy of the proposed agenda for the performance meeting Ren intended to have with Smiley. (Exhibit A, ECF No. 39-7 at 3-5). The proposed agenda documents a number of "work errors" and instances of "attitude/behavior." *Id.* Attached to the Ren declaration is a copy of a message Ren sent to Plaintiff. (Exhibit B, ECF No. 39-7 at 7). In the message dated July 16, 2015, Ren states, "Are you going to be in the office on Monday? I am trying to schedule a meeting as we talked about." *Id.* Attached to the Ren declaration is a invitation to a meeting dated July 19, 2015, to Ren, Smiley, Cardosa, and O'Shea scheduled for July 20, 2015 at 10:00 a.m. (Exhibit C, ECF No. 39-7 at 9).

Attached to the deposition of Plaintiff is a copy of Plaintiff's response to the meeting invitation in which Plaintiff states, "Thanks, but please don't" and declines the July 20, 2015 meeting invitation. (Exhibit C, ECF No. 39-4 at 44-45). In a copy of an email chain dated July 20, 2015, Ren states that Plaintiff needs to attend the meeting. (Exhibit C, ECF No. 39-4 at 67-68).

In the deposition of Thomas Cardosa, Cardosa states that he, Ren, and O'Shea were present for the July 20, 2015 meeting. Cardosa states that Plaintiff was not present. (Cardosa Dep., ECF No. 39-4 at 115-16). Cardosa states,

> The recommendation to terminate Karmen's employment was based that [sic] she refused to attend a performance conversation. The previous topics that we discussed today were going to be included in that conversation. In no way, shape, or form was that meeting to be a termination meeting. It was to provide Karmen with specific documented examples where she can – she can understand what's expected of her so that she could be successful as an Accountant II at Hologic.

*Id.* at 113. Cardosa states that the decision to terminate Plaintiff was made following the scheduled July 20, 2015 meeting that Plaintiff failed to attend. *Id.* at 117-18.

In a declaration by John O'Shea, Senior Director of Finance for the Diagnostic Division at Hologic, O'Shea states,

> [] Hologic is a leading developer, manufacturer, and supplier of diagnostic

products, medical imaging systems and surgical products. Hologic's core business segments include Diagnostics, Breast Health, GYN Surgical, and Skeletal Health. Hologic is a publicly traded company that is required to file quarterly financial statements with the Securities and Exchange Commission.

[] As a Senior Director of Finance for the Diagnostics Division of Hologic, I am a responsible [sic] for managing the finance team in Hologic's San Diego Location. Part of the duties of the San Diego finance team is to complete what is referred to as the Grifols Reclass, which is further explained below. As a result of my experience working with the Grifols Reclass, and supervising the process, I have personal knowledge of the facts below.

[] Hologic's Diagnostic segment includes the Molecular Diagnostics ("MDX") and Blood Screening divisions, among others.

[] Hologic sells several Diagnostic products across the globe. For internal record keeping, these sales are tracked by division (i.e. MDX or Blood Screening) and by geographic code ("Geo Code"). Different Geo Codes are assigned to different countries. The division allocation is determined by the customer, while the location is determined by the country where the product was sold. As such, the same product, depending on to whom it is sold, can be allocated to different divisions.

[] When a product sells and an invoice is created, Hologic's accounting system automatically generates an entry which "maps" the "revenue" and the "cost of goods sold" for each product listed on the invoice to both a division and to a Geo Code. However within Hologic's accounting system, each product can only be "mapped" to a single Diagnostic division. In the case of these products, when operating correctly, regardless of the customer, a domestic sale of a Diagnostic product should automatically create a Revenue and Cost of Goods Sold entry in the MDX division under a domestic Geo Code. Similarly, an international sale of a Diagnostic product should automatically create a Revenue and Cost of Goods sold entry in the MDX division under the appropriate international Geo Code.

[] Relevant to the current case, Hologic sells several dual-division products through its partnership with Grifols, a Spanish multinational pharmaceutical and chemical company. Diagnostic products sold to Grifols are accounted for under the Blood Screening division. Consequently, and as explained above, because Hologic initially records all Grifols product sales to MDX (either Domestic or International, as appropriate), a manual reclassification must be performed during the month-end close to transfer the Revenues and Costs of Goods Sold attributable to Grifols out of the MDX division and into Blood Screening. Hologic refers to this standard monthly reclassification as the "Grifols Reclass." Prior to her termination, Ms. Smiley regularly and repeatedly processed the Grifols Reclass entry during month-end close.

[] In June 2015, I received a request to investigate a $1.4 million *credit* balance in MDX's International Cost of Goods Sold accounts for various international locations related to third-quarter 2015 Grifols sales.

[] Over roughly a one month period, the Senior Manager of Cost

Accounting and I, with assistance from Karmen Smiley, investigated the International $1.4 million Cost of Goods Sold credit to determine the source. Ms. Ren and I ultimately determined that during the third-quarter of 2015, Hologic's automated accounting system incorrectly recorded Cost of Goods Sold related to certain international Grifols product sales to the domestic Geo Code instead of the corresponding international Geo Code.

[] This error had two primary effects, the first of which is obvious – it overstated the amount of Costs of Goods Sold attributable to the domestic Geo Code. Second, and less obvious, since Ms. Smiley was unaware of the automated system error, she had continued to do the standard monthly Grifols Reclass. This meant Plaintiff transferred the Costs of Goods Sold from MDX International even though Hologic's accounting system had never initially recorded the costs in that account.

(O'Shea Decl., ECF No. 39-11).

In the deposition of Chun Ren, Ren states that following the investigation she provided an instruction to Plaintiff on how to prepare the journal entry "based on all the results and agreed between John O' Shea, myself, Joy, and corporate, and Karmen was included in all of the conversation." (Chen Dep., ECF No. 39-4 at 78-80). Ren states, "I walk [Plaintiff]through exactly why we're doing this and there are six journal entries, right, so I walk her through each single one of them and she put them into a journal entry form and locked the form into the system, which was Oracle, and submitted and I reviewed and posted." *Id.* at 80. Ren states that she signed and approved the Grifols correction journal entries on July 1st or 2nd.[1] *Id.*

In the deposition of Plaintiff Karmen Smiley, Plaintiff states that prior to her termination, she discussed the Grifols Reclass with Rich Noel, Chun Ren, Joy Umayam, Allison Ericson, and "Carrie." (Smiley Dep., ECF No. 44-2 at 13). Plaintiff states that she had her first conversation with Ren regarding the Grifols Reclass when Ren "told her to reclass all three months . . . cost of goods sold." *Id.* at 14. Plaintiff states, "I told her we don't have any basis for it, and I told them that's against [Sarbanes-Oxley], because it's a 3.4 million, and it's a big flier for Ernst & Young; and they would like to have a details [sic] analysis of what they're for." *Id.*

Plaintiff states that she spoke with Rich Noel over the telephone about the Grifols

---

[1] These journal entries are referred to as the "Grifols Reclass."

Reclass,

> I said [to Noel on the phone] that I was forced to perform an entry in Oracle. And I said having no support to a transaction, an adjustment to your general ledger, is in violation to [Sarbanes-Oxley]. This is first of all. And second of all is I don't think the transactions were correct. So before we get dinged by the auditors, I might as well get us, we are a team, to make sure the transactions were right. If I was wrong, I'll say okay. Because . . . I felt like I have a fiduciary duty to question something that I think is wrong. And if — if Rich Noel said, yes, what they told you is correct, I will tell them and say okay, everything is dandy, Rich Noel said our adjustments were right. So there is really no malicious – I don't have any malicious intention.

(Smiley Dep., ECF No. 39-4 at 36).

In another portion of her deposition, Plaintiff states that she told Allison Ericson, Rich Noel, Chun Ren, and Joy Umayam about the "alleged violations [she] witnessed at Hologic" but does not remember telling anybody else. *Id.* at 23. Plaintiff states that she did not contact anyone at a government agency or outside of Hologic prior to her termination. *Id.* at 24. Plaintiff states that the "third-quarter 2015 Grifols reclassification" was the only conduct she believed was illegal. *Id.* at 28. Plaintiff states that on the day prior to her termination she told Ren about her conversation with Noel. Plaintiff states that this occurred,

> When I told her that . . . I called Rich Noel, and I told him I don't think we're in compliance, I want to make sure I get his input. Because we're getting audited by Ernst & Young, and I'd rather we fix it ourselves rather than get written up and get a . . . bad review from Ernst & Young, and it won't be reported to SEC.

*Id.* at 28. Plaintiff states that the day before she got fired she "told Joy Umayam and Chun Ren that I think we need to reclass this, because it was clearly wrong. And it was verified by Rich Noel . . . and I told him we're going to be in violation if we don't fix this." *Id.* at 28-29.

Plaintiff states that she told Ren she would be declining the July 20, 2015 meeting. *Id.* at 55-56. Plaintiff states that she was terminated at a meeting with Stephanie Heller, John O'Shea, and Chun Ren and that the reason given for her termination was insubordination. *Id.* at 57.

In the deposition of Rich Noel, Noel states that he had a conversation via Lync

messaging and telephone with Plaintiff on July 21, 2015 about the appropriateness of a method of doing a correcting journal entry. (Noel Dep., ECF No. 44-2 at 21).

In her declaration, Joyce Umayam, a Manager of Financial Planning and Analysis for Hologic, states,

> In my capacity as a Manager of Finance, I am not involved with cost accounting, but rather handle revenue reporting. For example, while I am responsible for reclassifying the revenue for Hologic products sold to Grifols, I am not involved at all in the reclassification of any costs and have no familiarity with the process. I also do not have authority to investigate, discover, or correct any violation regarding cost accounting entries. . . . As a Manager of Finance in Financial Planning and Analysis, I also have no authority over any cost accounting employee, including Karmen Smiley.

(Umayam Decl., ECF No. 39-5 at 2).

In a declaration by Allison Ericson, Human Resources Business Partner at Hologic, Inc., Ericson states,

> In July of 2015, I was employed by Hologic as an Organizational Development and Learning Specialist. In my capacity as an Organizational Development and Learning Specialist, I was responsible for creating and presenting leadership and management training to employees at Hologic.
>
> [] In July 2015, I was approached by Karmen Smiley because she wanted to speak with someone in Human Resources regarding her manager's manager John O'Shea. She did not go into specifics, but she did mention that she had issues with him questioning her work during a meeting and there was some accounting data he asked her to present in a way in which she did not agree.
>
> [] As an Organizational Development and Learning Specialist, I had no authority over Ms. Smiley. I did not direct Ms. Smiley, assess her performance or weigh in on any decision regarding Ms. Smiley's employment.
>
> [] Similarly, by virtue of my position, other than to provide employees training, I did not have authority to investigate, discover, or correct any violation occurring in the finance department or have any involvement in the department's operations in general. Indeed, because I did not have the authority to address Ms. Smiley's concerns, I instructed her to speak with Stephanie Heller, the Director of Human Resources.
>
> [] I followed up with Ms. Heller, after Ms. Smiley approached me, to let her know that Ms. Smiley wanted to speak to her regarding her management, but provided no specifics to Ms. Heller.
>
> [] I also spoke to Thomas Cardosa regarding my interaction with Ms. Smiley, but specifically recall that it was after the decision to terminate Ms. Smiley had been made.

(Ericson Decl., ECF No. 39-10).

In a deposition of Joseph Abramson, a former senior manager of cost accounting, Abramson states that in his five to six years as senior manager of cost accounting, he was senior to Plaintiff and had the responsibility of appraising her work performance. Abramson states that he never elevated any work-related concerns to his supervisors regarding Plaintiff and that "[s]he was always the one willing to, you know, take the computer home, work on weekends, get the job done." (Abramson Dep., ECF No. 44-2 at 42-43). Abramson states,

> [W]e . . . never ran into any work-related issues with Karmen Smiley . . . I would say that she was punctual. And meet deadlines [sic], and she was always good at getting those done. She was my go-to person as far as issues we had with systems. She had a lot of contacts with both SAP and Oracle. So if we needed detail somehow out of a system, I would go to Karmen and ask her to help with that; very thorough, thoughtful . . . I thought she was a very conscientious employee.

*Id.*

Plaintiff provides performance appraisals and reviews of her work from 2005 to 2013 in which she received marks of "meets expectations" and "exceeds expectations." (Exhibit E, ECF No. 44-2 at 28-39).

**III. Legal Standard**

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).

The moving party has the initial burden of demonstrating that summary judgment

is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate. *See Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 322, 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *See Anderson*, 477 U.S. at 255. To avoid summary judgment, the opposing party cannot rest solely on conclusory allegations of fact or law. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, the nonmovant must designate which specific facts show that there is a genuine issue for trial. *See Anderson*, 477 U.S. at 256.

**IV. Contentions of the Parties**

Defendant contends that Plaintiff cannot establish the elements of her retaliation claims because Plaintiff failed to make a protected disclosure to an individual covered by California Labor Code section 1102.5(b); Plaintiff has not identified a specific statute, rule or regulation she reasonably believes was violated; and, Plaintiff has not reported an activity that amounts to a violation of law. (ECF No. 39-1 at 21-27). Defendant contends that Noel, Umayam, and Ericson "did not have authority over Plaintiff and [were] not responsible for, or have the authority to address, any issues related to the cost allocations of the Q3 2015 Grifols Reclass." *Id.* at 22-23. Defendant contends that any statements to Ren are not protected disclosures because Ren knew about the Grifols Reclass prior to these conversations. *Id.* at 22. Defendant contends that Plaintiff's claims regarding her termination for potential future disclosures are outside the scope of the complaint and unsupported by any evidence. (ECF No. 46 at 5). Defendant contends that Plaintiff cannot establish a causal nexus between the protected activity and an adverse employment action. (ECF No. 39-1 at 26). Defendant contends that the decision to terminate Plaintiff's employment was based on inadequate performance, unprofessional attitude, and insubordination, including Plaintiff's refusal to attend a mandatory meeting with management. *Id.* at 27-28. Defendant contends that the wrongful termination cause of action fails because Plaintiff "may not maintain a

wrongful termination in violation of public policy claim as a fall-back to a statutory claim if the underlying statutory claim itself fails." *Id.* at 19-20. Defendant contends that Plaintiff's requests for punitive damages and attorneys' fees fail as a matter of law. *Id.* at 29-30.

Plaintiff contends that she engaged in a protected activity by reporting to four individuals who she believed had supervisory and managerial authority. (ECF No. 44 at 13-14). Plaintiff contends that a material issue of fact exists as to whether Plaintiff alerted individuals in a managerial capacity. *Id.* at 15. Plaintiff contends that her employment was terminated because Ren and O'Shea knew that the Grifols Reclass was a violation and feared that Plaintiff would disclose the information. *Id.* at 15-16. Plaintiff contends that she "believed Hologic's unwillingness to provide back-up for the [Grifols Reclass] would violate the Sarbanes-Oxley reporting requirements; would not meet financial statement obligations under Generally Accepted Accounting Principles; would implicate the Securities Act of 1933 . . . or the Securities and Exchange Act of 1934 . . .; and would not survive auditor scrutiny." (ECF No. 44 at 15). Plaintiff contends there is a causal link between Plaintiff's employment termination and her reporting of the potential violation. *Id.* at 18. Plaintiff contends that Defendant's explanation of insubordination is insufficient. Plaintiff contends that Plaintiff did not attend the July 20, 2015 meeting because she had a meeting scheduled three days later. Plaintiff contends that the alleged deficiencies in Plaintiff's work listed by Ren had never been brought to Plaintiff's attention. (ECF No. 44 at 17-18). Plaintiff contends that she does not need to prove a violation of California Labor Code section 1102.5 to succeed on her wrongful termination claim. *Id.* at 21. Plaintiff contends that summary judgment as to punitive damages should be denied because a genuine issue of material exists as to whether Hologic's actions constituted malice, oppression, or fraud. *Id.* at 24. Plaintiff contends that a genuine issue of material fact exists as to whether she is entitled to attorneys' fees under California Code of Civil Procedure section 1021.5. *Id.* at 24-25.

**V. Retaliation Under California Labor Code Section 1102.5(b)**

California's whistleblower statute, California Labor Code section 1102.5, "reflects the broad public policy interest in encouraging workplace whistle blowers to report unlawful acts without fearing retaliation." *Green v. Ralee Engineering Co.*, 960 P.2d 1046, 1052 (Cal. 1998). Subdivision (b) of California Labor Code section 1102.5 provides,

> An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties.

Cal. Lab. Code § 1102.5(b).

Courts apply the burden-shifting analysis set forth by the United States Supreme Court in *McDonnell Douglas v. Greene*, 411 U.S. 792 (1987), to claims under section 1102.5. *See*, *e.g.*, *Weinstein v. HBE Corp.*, No. 2:13-CV-04643-CAS, 2014 WL 5602510, at *6 (C.D. Cal. Nov. 3, 2014). To establish a prima facie case of retaliation, a plaintiff must demonstrate (1) she is engaged in a protected activity, (2) her employer subjected her to an adverse employment action[2] and (3) there is a causal link between the protected activity and the adverse employment action. *Patten v. Grant Joint Union High Sch. Dist.*, 37 Cal. Rptr. 3d 113, 117 (Ct. App. 2005). "The requisite degree of proof necessary to establish a prima facie case . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

"An employee engages in protected activity when she discloses . . . 'reasonably

---

[2] Defendant does not contend that Plaintiff did not suffer an adverse employment action.

based suspicions' of illegal activity." *Mokler v. Cnty of Orange*, 68 Cal. Rptr. 3d 568, 580 (Ct. App. 2007). To establish a reasonably based suspicion of illegal activity, "an employee need not prove an actual violation of law." *Green*, 960 P.2d at 1059. "To establish a prima facie case of retaliation, a plaintiff must show that she engaged in protected activity, that she was thereafter subjected to adverse employment action by her employer, and there was a causal link between the two." *Morgan v. Regents of Univ. of Cal.*, 105 Cal. Rptr. 2d 652, 666 (Ct. App. 2000) (citing *Guthrey v. State of California*, 75 Cal. Rptr. 2d 27 (Ct. App. 1998)). "The causal link may be established by an inference derived from circumstantial evidence, 'such as the employer's knowledge that the [employee] engaged in protected activities and the proximity in time between the protected action and allegedly retaliatory employment decision.'" *Id.* (quoting *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)). "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." *Id.* (quoting *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982)); *see also Feretti v. Pfizer Inc.*, No. 11cv4486, 2013 WL 140088, at *10 (N.D. Cal. June 6, 2016) ("Thus, Plaintiff may establish causation by showing that: (1) one of the decision makers responsible for each of the adverse employment actions taken against Plaintiff had knowledge that Plaintiff had engaged in protected activity, and (2) there is a close proximity in time between the protected activity and the adverse employment action.").

Once a plaintiff has established a prima facie case of retaliation, the defendant must provide a legitimate, nonretaliatory explanation for the adverse employment action. *See Patten*, 37 Cal. Rptr. 3d at 117. Once an employer satisfies its burden of producing evidence of a legitimate reason for the termination, the plaintiff must 'tender a genuine issue of material fact as to pretext to avoid summary judgment." *Payne v. Northwest Corp.*, 113 F.3d 1079, 1080 (9th Cir. 1997). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin v. Hunt Wesson,*

*Inc.* 150 F.3d 1217, 1221 (9th Cir. 1998).

> [W]here direct evidence is unavailable, however, the plaintiff may come forward with circumstantial evidence that tends to show that the employer's proferred motives were not the actual motives because they are inconsistent or otherwise not believable. Such evidence of 'pretense' must be 'specific' and 'substantial' in order to create a triable issue . . .

*Id.* at 1222.

## A. Plaintiff's Prima Facie Case

### 1. Disclosure to a Person with Authority

To constitute a protected activity pursuant to section 1102.5, a disclosure must be "to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance." Cal. Labor Code § 1102.5(b).[3] It is undisputed that, "Plaintiff alleges that she disclosed her concerns regarding the Q3 Grifols Reclass to Allison Ericson, Rich Noel, Chun Ren, and Joy Umayam[ ]."[4] (SUMF, ECF No. 46-1 at ¶ 2).

In her declaration, Ren states that she is a Senior Manager of Cost Accounting at Hologic and was Plaintiff's direct supervisor. (Ren Decl., ECF No. 39-6 at 1-4). In her deposition, Ren states that she instructed Plaintiff to do the Grifols Reclass around July 1st or 2nd of 2015. (Ren Dep., ECF No. 39-4 at 80). The Court concludes that Ren is "a person with authority over the employee or another employee who has the authority to discover, or correct the violation or noncompliance." Cal. Labor Code § 1102.5. However, relying on *Mize-Kurman v. Marin Community College District*, 136 Cal. Rptr. 3d 259 (Ct. App. 2012), Defendant contends that any disclosure to Ren is not a protected activity because Ren is the individual who instructed Plaintiff to complete

---

[3] Section 1102.5 also protects disclosures to a government or law enforcement agency. Cal. Labor Code § 1102.5. The parties agree that Plaintiff did not disclose any information to a government or law enforcement agency. (SUMF, ECF No. 46-1 at ¶ 2).

[4] In her response to the statement of undisputed fact, Plaintiff does not dispute that Plaintiff disclosed her concerns to Ericson, Noel, Ren and Umayam but states, "Plaintiff disclosed her concerns, or those concerns were made known, to other Hologi employees: Tom Cardosa; Stephanie Heller; John O'Shea; Glen Burkhardt; and Peter Dunne." (SUMF, ECF No. 44-1 at ¶ 1). Plaintiff does not identify any evidence in support of this assertion.

the Grifols Reclass and approved the journal entry.

In *Mize-Kurman*, a California court of appeal considered a jury instruction on what constitutes a protected disclosure under two California whistleblower statutes, including California Labor Code section 1102.5. 136 Cal. Rptr. 3d 265-66. The case dealt with alleged disclosures made by a community college dean to her direct supervisor. *Id.* at 266. The jury instruction stated, "Reporting publicly known facts is not a protected disclosure." *Id.* The court determined this was a proper limitation on a disclosure under California law because a report of information that is already known does not constitute a disclosure. *Id.* at 281-82. The court stated, "This conclusion is consistent with those cases holding that the employee's report to the employee's supervisor about the supervisor's own wrongdoing is not a 'disclosure' and it not protected whistleblower activity, because the employer *already knows* about his or her wrongdoing." *Id.* at 282.

The Court concludes that *Mize-Kurman* is distinguishable from this case because it was decided prior to changes to section 1102.5 that form the basis of Plaintiff's claims. At the time *Mize-Kurman* was decided in 2012, section 1102.5(b) did not provide protections for employees who report internally within a company or organization. The former version of the statute provided:

> An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

*Id.* at 269 n.2 (quoting Cal. Labor Code § 1102.5(b)).[5] In 2013, the California Legislature amended section 1102.5(b), effective January 1, 2014, to add the current language protecting disclosure "to a person with authority over the employee or to another employee who has authority to investigate, discover, or correct the violation or

---

[5] This section was applicable in *Mize-Kurman*, because the plaintiff was a public employee. *See Green*, 960 P.2d at 1052 (holding that in 1998, under the prior version of the statute, "[s]ection 1102.5, subdivision (b), concerns employees who report to public agencies. It does not protect plaintiff, who reported his suspicions directly to his employer").

noncompliance" and the language providing that an employer shall not retaliate "because an employer believes the employee disclosed or may disclose information." (Stats. 2013, Ch. 781 (S.B. 496), § 4.1). In addition to protecting employees who have made disclosures, section 1102.5(b) now provides that "an employer, or any person acting on behalf of the employer, shall not retaliate against an employee . . . because the employer believes that the employee disclosed or *may disclose* information . . . to a person with authority over the employee or to another employees who has authority to investigate, discover, or correct the violation or noncompliance." Cal. Labor Code § 1102.5(b) (emphasis added).

Plaintiff provides evidence that she stated concerns about the Grifols Reclass violating Sarbanes-Oxley to both Ren and Noel prior to her termination. In her deposition, Plaintiff states that when Ren initially instructed Plaintiff to complete the Grifols Reclass, "I told her we don't have any basis for it, and I told them that's against [Sarbanes-Oxley], because it's a 3.4 million, and it's a big flier for Ernst & Young; and they would like to have a details [sic] analysis of what they're for." (Smiley Dep., ECF No. 44-2 at 14). Plaintiff states in her deposition that the day before she was terminated she told Ren and Umayam about Plaintiff's conversation with Noel.[6] (Smiley Dep., ECF No. 39-4 at 28-30). Ren was in a supervisory capacity over Plaintiff and there is evidence that Ren was involved in the decision to terminate Plaintiff. (Ren Decl., ECF No. 39-6 at 1-4). Section 1102.5(b) protects employees where they face retaliation arising out of their employers' concerns about future disclosures. Plaintiff's statements to Ren and Ren's awareness of Plaintiff's statements to Noel provide evidence that Plaintiff was terminated because Defendant believed that Plaintiff "may disclose information." Cal. Labor Code § 1102.5(b). The Court concludes that Plaintiff raises a material issue of fact as to whether Plaintiff was fired because Defendant believed that

---

[6] Defendant contends that the decision to terminate Plaintiff was finalized prior to this conversation. Thomas Cardosa states in his declaration that the decision to terminate Plaintiff was "finalized no later than July 21, 2015." (Cardosa Decl., ECF No. 39-8).

Plaintiff may disclose information related to the Grifols Reclass.

### 2. Statute, Rule or Regulation Reasonably Believed to Be Violated

Plaintiff provides evidence that she had reasonably based suspicions of illegal activity. In her deposition, Plaintiff states that she contacted Noel because she believed that the Grifols Reclass was unsupported by documentation and violated the Sarbanes-Oxley Act. (ECF No. 39-4 at 36). Plaintiff states when Ren instructed her to perform the Grifols Reclass, she told Ren there was no basis for this action and it was against Sarbanes-Oxley. (Smiley Dep., ECF No. 44-2 at 13). In Noel's deposition, he states that Plaintiff contacted him about concerns over the appropriateness of a correcting journal entry. (Noel Dep., ECF No. 44-2 at 21). California law requires a reasonably based suspicion of illegal activity; it does not require Plaintiff to prove a violation occurred. *Green*, 960 P.2d at 1059. The Court finds that Plaintiff provides sufficient evidence to raise a material issue of fact as to whether she disclosed reasonably based suspicions of illegal activity.

### 3. Causal Connection

Plaintiff provides evidence that Ren had knowledge of Plaintiff's engagement in a protected activity and that a close proximity in time existed between Plaintiff's actions regarding the Grifols Reclass and her termination. *See also Feretti*, 2013 WL 140088, at *10 ("Plaintiff may establish causation by showing that: (1) one of the decision makers responsible for each of the adverse employment actions taken against Plaintiff had knowledge that Plaintiff had engaged in protected activity, and (2) there is a close proximity in time between the protected activity and the adverse employment action."). In her deposition, Plaintiff stated that Plaintiff raised her concerns about the Sarbanes-Oxley violation when Ren initially instructed her to complete the Grifols Reclass. (Smiley Dep., ECF No. 44-2 at 13). Plaintiff stated that she informed Umayam and Ren about her conversation with Noel the day before Plaintiff was terminated. (Smiley Dep., ECF No. 39-4 at 28-29). Ren stated in her declaration that she and Thomas Cardosa made the decision to terminate Plaintiff. (Ren Decl., ECF No. 39-6 at 1-4).

Further, Plaintiff provides facts to establish a close proximity in time between the protected activity and the termination. According to testimony from Ren, the Grifols Reclass took place in the beginning of July 2015. (Chen Dep., ECF No. 39-4 at 78). Plaintiff provides evidence that her statements to Ren about both her concerns about the Grifols Reclass and her conversation with Noel took place in the weeks following the Grifols Reclass. (Smiley Dep., ECF Nos. 44-2 at 13; 39-4 at 28-29). In his declaration, Thomas Cardosa stated that Plaintiff was terminated on July 24, 2015. (Cardosa Decl., ECF No. 39-8).

Plaintiff provides sufficient evidence to establish a material issue of fact as to causal nexus. The Court finds that Plaintiff has provided the minimal degree of proof necessary to establish a prima facie case for purposes of summary judgment. *See Wallis*, 26 F.3d at 889.

**B. Legitimate Nonretaliatory Explanation and Pretext**

Defendant provides evidence that Plaintiff was terminated for insubordination after Plaintiff declined to attend a meeting requested by her supervisor. Defendant provides copies of email transcripts in which Plaintiff declines the meeting invitation and Ren, Plaintiff's supervisor, informs Plaintiff that her attendance is important. (*See, e.g.*, Exhibit C, ECF No. 39-4 at 44, 67-68). Defendant provides declarations stating that the decision to terminate Plaintiff followed her failure to attend the scheduled July 20, 2015 meeting. (Cardosa Decl., ECF No. 39-8 ; Ren Decl., ECF No. 39-6 at 1-4). Defendant provides a list of deficiencies with Plaintiff's work performance compiled in preparation for the performance review meeting scheduled for July 20, 2015. (Exhibit A, ECF No. 39-7 at 3-5). The Court concludes that Defendant provides evidence of a legitimate, nonretaliatory reason for terminating Plaintiff sufficient to satisfy its burden on a motion for summary judgment.

Because Defendant provides sufficient evidence of a legitimate, nonretaliatory reason for the termination, Plaintiff must demonstrate that there is a genuine issue of material fact as to whether the explanation provided for the termination is pretext for

retaliation. While temporal proximity alone is not enough to establish pretext after a employer has provided a legitimate, nonretaliatory explanation, in this case, Plaintiff provides additional circumstantial evidence of pretext. *See Arteaga v. Brink's, Inc.*, 77 Cal. Rptr. 3d 654, 675 (Ct. App. 2008). In his deposition, Joseph Abramson, who was in a supervisory capacity over Plaintiff for 5-6 years, stated that Plaintiff was consistently a conscientious employee. Abramson states that he never had concerns about Plaintiff's work. (Abramson Dep., ECF No. 44-2 at 42-43). Plaintiff provides performance reviews of her work from 2005 to 2013 showing positive reviews of her work performance. (Exhibit E, ECF No. 44-2 at 28-39). The Court concludes that Plaintiff provides facts sufficient to raise a disputed issue of material fact as to whether Defendant's explanation for the employment termination was pretext for retaliation.

The motion for summary judgment as to Plaintiff's cause of action under California Labor Code section 1102.5(b) is denied.

## VI. Wrongful Termination in Violation of Public Policy

To prevail on a claim for wrongful termination in violation of public policy, a plaintiff must establish that (1) an employer-employee relationship existed; (2) plaintiff's employment was terminated; (3) the violation of public policy was a motivating reason for the termination; and (4) the termination was the cause of plaintiff's damages. *Haney v. Aramark Unif. Servs., Inc.*, 17 Cal. Rptr. 3d 336, 348-49 (Ct. App. 2004).

Defendant contends that Plaintiff's claim for wrongful termination must rise and fall with her claim under Labor Code section 1102.5 because it is premised on the exact same allegations and conduct. (ECF No. 39-1 at 19). The Court denied Defendant's motion for summary judgment as to the cause of action under California Labor Code section 1102.5(b). Accordingly, Defendant's motion for summary judgment as to the cause of action for wrongful termination in violation of public policy is denied.

## VII. Punitive Damages

Punitive damages are available for both of Plaintiff's causes of action. Cal. Civ.

Code § 3924.; *see also Weinstein*, 2014 WL 5602510 at *9. Pursuant to California Civil Code section 3294(a),

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal. Civ. Code § 3294(a). Subdivision (b) of California Civil Code section 3924 provides:

> An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

Cal. Civ. Code § 3294(b). At this stage in the proceedings, the Court cannot conclude that Plaintiff is not entitled to punitive damages as a matter of law.

**VIII. Attorneys' Fees**

California Code of Civil Procedure provides,

> Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement . . . are such as to make the award appropriate, and (c) such fees should not, in the interest of justice be paid out of the recovery, if any.

Cal. Civ. Code § 1021.5; *see also Satrap v. Pac. Gas & Elec. Co.*, 49 Cal. Rptr. 2d 348 (Ct. App. 1996). The Court declines to strike Plaintiff's request for attorneys' fees at this stage in the proceedings.

**IX. Conclusion**

IT IS HEREBY ORDERED that the motion for summary judgment filed by Defendant Hologic, Inc. is DENIED. (ECF No. 39)

IT IS FURTHER ORDERED that a Pretrial Conference on this matter is

1  scheduled for Friday, June 23, 2017 at 10 a.m. in Courtroom 14B before Judge William

2  Q. Hayes.

3  DATED:  April 12, 2017

4                                                    *William Q. Hayes*
                                                     **WILLIAM Q. HAYES**
5                                                    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28